GReen, J.
delivered the opinion of the court.
This bill is filed to foreclose a mortgage, executed to the complainants, by the defendant Wells, upon part of lot 172, in the city of Nashville, to secure a debt due the complainants of upwards of eight thousand dollars. Said mortgage is dated 16th of June, 1843. The said defendant Wells, being indebted to the other defendant, the Planters’ Bank of Tennessee, in the. sum of thirty thousand dollars, to secure the payment thereof, on the 14th day of November, 1840, executed to said Bank a mortgage, for said house and lot, No. 172, and also for a house and lot, No, 9, in said city. The debt to the Planters’ Bank was due in annual instalments from one to ten years. Wells, before the bill was filed, had paid the four first instalments due the bank, but he had failed to pay the fifth note, due the 13th of October, 1845.
The bill seeks to have the mortgage to the bank foreclosed, and that it have the lot No. 9, upon which the complainants have no lien, applied towards the extinguishment of its debt in the first place, and then so much of the proceeds of lot No. 172, as may be necessary to satisfy the same. The bill prays that a receiver be appointed to receive the rents of the lot mortgaged to the complainants. On the 28th of August, 1846, Wells, the mortgagor, (who had remained in possession, and who had previously rented the property, and received the rents,) rented the *579 house, and lot No. 9., to E. 0. Butler, trustee for O. P. Catron, for one year, to commence the 31st day of October, 1846; and Butler executed two notes for the rent, dated 31st of October, 1846, for five hundred dollars each, due, the one at six and the other at twelve months.
This bill was filed the 16th of October, 1846, and on the 5th of November G. M. Fogg, agent of the complainants, filed an affidavit, stating that the mortgaged premises were wholly inadequate to pay all the debts; whereupon, on motion of the complainants, and the Planters’ Bank, (a defendant) a receiver was appointed by the court, to rent the mortgaged premises, — lots No. 173 and No. 9, — with orders to give the tenants in possession immediate notice thereof. The. receiver’s notice was served upon the tenants’ in 'possession,, the 6th of November, 1846. The tenants in possession refused to pay rent to the receiver,-and the court, at November term, 1847, directed that said tenants be summoned to appear, and shew cause why the court should not adjudge that they should pay rent to the receiver. E. C. Butler, who had occupied the. house, on lot No. 9, appeared, and showed for cause, that, before he knew of the existence of said mortgage, he had rented the house from Wells, for one year, to commence the 31st of October; and had executed to him negotiable notes, for the rent, and before he had received notice to pay rent to the receiver, the said notes had been negotiated by Wells, in due course of trade, and that the holder would enforce payment.
The court, thereupon, decreed, that the said Butler was liable to pay the rent to the receiver from the 6th of November, the time the receiver was appointed, and gave notice to said Butler, until the 31st of October, 1847, amounting to eight hundred and ninety-nine dollars and ten cents. From this decree Butler appealed to this court.
*580 1. Upon these facts, the first question is, have the complainants a right to insist that the Planters’ Bank shall first resort to the house and lot No. 9, for the satisfaction of its debt? That they have such right, is the settled law of a court of chancery. The general principle is, that if one party has a lien on two funds, for his debt, and another party has a lien on one only of the funds, for another- debt, the latter has a right, in equity, to compel the former to resort to the other fund, in the first instance, for satisfaction. 1 Story’s Eq., Ju., sec. 559, 633, Thus, in the case put by Mr. Justice Story, (Eq. Ju., sec. 633,) “ If A has a mortgage upon two different estates for the same debt, and B has a mortgage upon one only of the estates for another debt, B has a right to throw A, in the first instance, for satisfaction, upon the security, which he, B, cannot touch; at least, where it will not prejudice A’s rights, or improperly control his remedies.” And this is certainly reasonable; for by compelling A to take satisfaction out of one of the funds, no injustice is done to him, and it is the only way by which B can receive payment. Upon this principle, the complainants, having a mortgage on lot, No. 172 only, and the Planters’ Bank having a prior mortgage upon that lot, and also upon lot No. 9, the bank may be compelled, in the first instance, to resold to the lot No. 9, for satisfaction. And it seems clear, that if the entire fund shall be deemed inadequate for the satisfaction of both debts, — the second mortgagee, may require, that the first mortgagee shall receive the rents of the estate also, and apply them to his debt.
2. Although the legal estate is vested in the mortgagee, yet there is a tacit assent, that the mortgagor shall retain the possession until default of payment, and while he thus retains possession he is not bound to account for rent. *581 But the mortgagee may, at any time, and before default, if he choses, put the mortgagor out of possession, by ejectment, or other proper suit. 4 Kent’s Com., 155. When the mortgagor is left in possession, the true inference to be drawn is, that he shall possess the premises at will, in the strictest sense; and, therefore, he is not entitled to notice to quit. 1 Pow. on Mort., 160.
If the mortgagor lease the estate, while he is permitted to retain the possession, the. tenant can only enjoy such rights as the mortgagor possessed; for, says Chancellor Kent, (4 Com., 157,) “every person taking under him, takes, subject to all the rights of the mortgagee, unimpaired and unaffected.” This doctrine is much more reasonable in this country than it is in England, for it is the duty there, of a party who wishes to take a lease, to enquire after, and examine the title deeds: his negligence is much greater here, if he fail to acquire a knowledge of the mortgage, because an examination of the Register’s Books, would afford the desired information. But whether the tenant of the mortgagor, has actual knowledge of the mortgage or not, can make no difference; the registration is constructive notice to him, and he stands in exactly the situation of the mortgagor; for a mortgagor has no power, express or implied, to let leases not subject to every circumstance of the mortgagee. 1 Pow. on Mort., 60; Doug. Rep., 21; 4 Kent’s Com., 156, Therefore, although, if the mortgagee permits the lessee to enjoy his lease, the mortgagor may be considered, in some sort, a trustee for the mortgagee, yet, the mortgagee may, at any time, countermand the implied authority, by giving notice to the tenant not to pay rent to the mortgagor any longer. 1 Pow. on Mort., 158. We think, from these principles, thus supported by the authorities, it is *582 clear, that Wells, the mortgagor, bad no right to make a lease from year to year, that would be obligatory upon the mortgagee; and that Butler, the tenant, paid the rent in advance, in his own wrong. He must be held to have had notice of the mortgage, and consequently to have had a knowledge of the rights of the mortgagee, and that it was in the power of the mortgagee, at any time, to require the rent to be paid to him; and, therefore, that the mortgagor had no right to receive the rent in advance. It is the tenant’s folly, and misfortune, that he executed negotiable securities for the rent agreed . on. He may, thereby, be required to pay the rent for this property, both to the mortgagor and mortgagee; but we cannot, on account of the hardship of the case, deprive the mortgagee of his unquestionable rights.
3. It is insisted, that a court of chancery has no jurisdiction to afford the relief now sought; that the tenant of the mortgagor, cannot be regarded as the tenant of the mortgagee, unless the tenant attorn to the mortgagee, and that the mortgagee’s only remedy is, to turn the tenant out by an ejectment, and then sue for mesne profits.
Upon this question, the authorities are somewhat contradictory, but the later cases seem to maintain the doctrine, that the mortgagee cannot, by giving the mortgagor’s tenant notice to pay rent to him, treat him as tenant, and distrain for rent, but-that in order to recover rent, the mortgagee must bring his ejéctment, and then recover for mesne profits. But where the mortgagee brings his bill to foreclose the mortgage, this doctrine has no application. If the fund is in danger, a receiver will be appointed, such appointment, resting in the discretion of the court. 3 Dan. Ch. Pl. and Pr., 1949. When a receiver has been appointed, it is the duty of any party *583 on the record, to deliver up the possession of any lands and tenements that are in the occupation of the party, and the court in appointing a receiver, may order that the tenants attorn to the receiver, and pay their rent to him. 3 Dan. PI. and Pr., 1982-3. If they refuse to attorn, on being notified by the receiver, the practice in England is, for the party, obtaining the order for a receiver, to proceed against them for a contempt, lb., 1983. Thus, it will be seen, that in this case, the bank may be compelled to exhaust its remedies as to the estate the complainants cannot touch, before it will be allowed to obtain satisfaction from the estate mortgaged to the complainants; and one of those remedies is, to have the rents of lot No. 9, applied to the first mortgage, seeing the fund is inadequate. This is plainly an equity the complainants have against the mortgagor, ard the first mortgagee. But how can thij3 be effected unless a receiver be appointed to collect the rents ? Shall the first mortgagee be compelled to bring an ejectment to obtain possession, and then an action for mesne profits? Why all this delay, and circuity of action, when the court has all the parties before it ? Upon the foreclosure of a mortgage, our practice is, to sell the estate, and pay the parties according to priority. The receiver is, therefore, for the benefit of all the parties; and we think the chancery court had power to make the appointment in this case, and through the intervention of the receiver, to collect those rents — thus directly attaining the end which it is admitted the first mortgagee might have accomplished, by his ejectment, and his subsequent suit for an occupation rent.
4. It is objected that there is no prayer in this bill for a receiver, as to the house and lot No. 9, and that, therefore, the appointment was improper. In the case, of Malcolm *584 vs. Montgomery, 12 Con. Eng. Chan. Rep., 583, the Lord Chancellor said : “A prayer for a receiver is not necessary to get a receiver appointed, if the facts stated authorize the appointment of one.” And in Dan. Chan. Prac., 1974, the same principle is stated, with the observation, that the necessity for the appointment frequently occurs after the bill has been filed, so that it could not have been part of of the prayer, and the court will, nevertheless, make the order without requiring the bill to be amended, or a supplemental bill to be filed.”
5. It is objected that this receiver was appointed on the application of one of the defendants (the bank) against another defendant, the mortgagor, and this it is insisted cannot be done. The cases in which the court has refused a receiver upon the application of defendant, against a co-defendant, are cases where the party was not seeking the aid of the court, and no decree could be made for him. But here the complainants seek to be substituted to the rights of the first mortgagee, and to make him enforce all his rights against the mortgagor. Both mortgagees are seeking relief against the mortgagor and his tenant. In such a case, the court may decree in favor of one defendant against another. In fact, it is required to do so, in order to afford the relief, to which the complainants are entitled. And if, as between the defendants, the court may decree relief, it follows, that it may make any interlocutory order that may be made necessary to obtain relief. We think the defendant Butler, was liable to the mortgagee, for a reasonable occupation rent, from the time he had notice to pay to the receiver; and although the amount should have been settled by the master, yet the sum agreed on in the contract with Wells, furnishes evidence of the value of the premises, and *585 therefore, in taking that sum for the criterion by which to charge him, no injustice has been done. Upon the whole matter, we affirm the decree-